UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| CECILIA FRAZIER,<br><br>    Plaintiff,<br><br>v.<br><br>LINDA S. McMAHON,<br>Commissioner of Social<br>Security,<br><br>    Defendant. | Case No. CV 07-1199 AJW<br><br>MEMORANDUM OF DECISION |

Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's applications for disability insurance and supplemental security income ("SSI") benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

Plaintiff filed her benefits applications on March 17, 2004 alleging disability due to back, leg, and knee pain, and a tumor on her right flank. [JS 2; Administrative Record ("AR") 26, 84]. After her applications were denied initially and on reconsideration, a hearing was conducted before an administrative law judge ("ALJ") on November 22, 2005. [JS 2; AR 413-422]. Plaintiff was represented by counsel during the hearing and testified on her own behalf. Testimony also was received from Ruth Arnush, a vocational expert. [AR 413-422].

1         The ALJ issued a written hearing decision denying benefits on March 7, 2006.  The ALJ noted that
2   plaintiff was 47 years old, completed 11th grade, and had past relevant work as a certified nursing assistant
3   and a home attendant. [AR 18]. The ALJ made the following findings pursuant to the sequential evaluation
4   procedure. See 20 C.F.R. §§ 404.1520, 416.920. [AR 18-24]. Plaintiff did not engage in substantial, gainful
5   activity after her alleged onset date. Plaintiff had severe, medically determinable impairments consisting
6   of mild degenerative disc disease of the lumbar spine and right knee pain.  Those impairments did not meet
7   or medically equal a listed impairment. See 20 C.F.R. Pt. 404, Supt. P, App. 1. Plaintiff retained the residual
8   functional capacity ("RFC") to perform light work with no squatting or kneeling.  Her RFC did not prevent
9   plaintiff from performing her past relevant work as a home attendant.  Therefore, plaintiff was not under
10  a "disability" at any time through the date of the ALJ's decision. [AR 24].  The Appeals Council denied
11  plaintiff's request for review of the ALJ's decision, which stands as the final decision of the Commissioner.
12  [AR 5-8].

## Standard of Review

14        The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial
15  evidence or is based on legal error. Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).  "Substantial
16  evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d
17  1211, 1214 n.1 (9th Cir. 2005).  "It is such relevant evidence as a reasonable mind might accept as adequate
18  to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)(internal quotation marks
19  omitted). The court is required to review the record as a whole and to consider evidence detracting from the
20  decision as well as evidence supporting the decision. Robbins v. Soc. Sec. Admin, 466 F.3d 880, 882 (9th
21  Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to
22  more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must
23  be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599
24  (9th Cir.1999)).

## Disputed Issues

26        The disputed issues are whether (1) the ALJ erred in finding that plaintiff's limitations from a
27
28

lipoma[1] located on her right flank did not last for a continuous period of 12 months; and (2) the ALJ failed to provide clear and convincing reasons for rejecting plaintiff's subjective limitations. [JS 3].

**Discussion**

**Limitations from lipoma**

Plaintiff contends that the ALJ erred in finding that she had no functional limitations from her right flank lipoma that lasted for a continuous period of 12 months.

To qualify for benefits under the Act, plaintiff must establish an inability to engage in "substantial gainful activity" because of a "medically determinable physical or mental impairment" that "has lasted or can be expected to last for a continuous period of not less that 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1509, 416.909; see also Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989). Plaintiff bears the burden of proving that the 12-month duration requirement is satisfied. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996); Young v. Sullivan, 911 F.2d 180, 181 (9th Cir. 1990); see 20 C.F.R. §§ 404.1509 & 416.909.

The first reference in the treatment records to plaintiff's lipoma appears in a progress note of April 23, 2001 from plaintiff's visit to a Los Angeles County health clinic for complaints of shortness of breath and chest pain. [AR 397]. The treating physician noted that plaintiff had a right side "ache (tumor)" for six years. The treating source also remarked, however, that plaintiff had "no significant" past medical history. The note does not mention any treatment or intervention for the tumor, either in connection with that visit or previously. [AR 397]. Plaintiff presented for follow-up on April 30, 2001 with no complaints. [AR 396]. In May 2001, she underwent an annual gynecological examination and "denie[d] any pain." [AR 395].

In December 2003, more than two years later, plaintiff presented to the Harbor UCLA Emergency Department complaining of left lower quadrant abdominal pain, worsening over the weekend, and intermittent right flank pain and swelling. [AR177]. She reported taking no medication. [AR179]. The attending physician wrote that plaintiff had "minimal" abdominal pain without evidence of obstruction or significant diverticular disease. Diagnoses were a urinary tract infection and a lipoma on the right flank. [AR 178]. Plaintiff was prescribed an antibiotic. [AR 178].

---

[1] A lipoma is a "benign neoplasm of adipose tissue, composed of mature fat cells." Stedman's Medical Dictionary lipoma (27th ed. 2000).

3

1       Plaintiff returned for reevaluation on January 23, 2004 for recurring pain in her right flank for the
2  past four days. She said that she had experienced "this type of pain off & on since 1993." She was not taking
3  any medication, but she said that Motrin and exercising helped relieve her pain. [AR 173]. She was
4  discharged with instructions to take over-the-counter Tylenol or Advil as needed for pain and to return in
5  a week or two if her condition did not improve. [AR 171].

6       In February 2004, plaintiff presented at Harbor UCLA Medical Center for follow-up of abdominal
7  pain and tumor on her right flank.[AR 169-171]. She said her tumor had been increasing in size since 1993
8  and that she wanted it removed. [AR 169, 171]. The tumor was described as a "soft, movable mass" about
9  the size of cantaloupe. [AR 171]. Plaintiff reported that the current episode of pain had started three months
10 earlier. She said that Motrin helped relieve her pain, but that she was not taking medication. [AR 171]. She
11 was given a referral to the surgical oncology department. [AR 169-170].

12      Also in February 2004, plaintiff went to the Wilmington Family Health Clinic complaining of a
13 cough. [AR 2, 189]. She also reported that she wanted a referral for surgery to remove the lipoma, but she
14 denied any pain. [AR 189]. During a follow-up visit to the same clinic in March 2004, plaintiff complained
15 of right knee arthralgia for two years, relieved by Motrin. A surgery appointment to remove the lipoma in
16 April 2004 was noted, but the surgery did not take place as scheduled. [AR 188]. During a May 2004 visit
17 to Wilmington Family Health Clinic, plaintiff complained of right leg edema and pain no longer adequately
18 relieved by Motrin. The assessment was likely venous insufficiency, for which elastic hose was prescribed.
19 [AR 187].

20      In April 2004, plaintiff was seen in the surgical oncology department of Harbor UCLA Medical
21 Center. She reported that her tumor had started off small and grown slowly larger over the past 12 years.
22 She reported pain with pressure on the lipoma and "some pain" with walking. [AR 168]. Plaintiff said that
23 she was not taking any medication. An MRI and blood work were ordered. [AR 168].

24      During a follow-up visit to the surgical oncology department in September 2004, plaintiff
25 complained of tenderness at the site of the lipoma. [AR 277]. In November 2004, she was seen by another
26 doctor for pain in her right lower extremity pain, which she rated currently at 5 on a scale of 1 to 10. She
27 said she was taking Motrin. Plaintiff described her leg pain as worse with bending and sitting for prolonged
28 periods of time. She reported that the surgical oncology department told her that her leg pain might be

secondary to her lipoma. [AR 358]. She was given a diagnosis of chronic low back pain or sciatica with probable right knee degenerative joint disease. She prescribed Tylenol, and x-rays were ordered.[2] [AR 358].

On December 28, 2004, plaintiff was seen at Harbor UCLA Medical Center for complaints of pain along her entire right side. She was diagnosed with "large lipoma" and started on Neurontin and Tylenol with codeine for pain. A referral for outpatient surgery was completed. [AR 353-354].

In January 2005, plaintiff was seen again for right side pain. She was prescribed Tylenol with codeine as needed or Motrin. Her surgery referral was noted and an ultrasound referral was requested. [AR 346-347].

On February 7, 2005, plaintiff underwent outpatient surgery to excise the lipoma. She was ambulatory upon discharge. [AR 246-265, 326-329]. On February 23, 2005, she was seen at the Harbor UCLA Outpatient Clinic for follow-up. She was noted to be "doing well with minimal pain--incisional pain well controlled by one Vicodin at night." [AR 243]. She displayed a "well healed" right flank incision and as "healing well." [AR 243]. She was discharged from the clinic's care without further treatment and encouraged to follow up with her primary care doctor. [AR 243].

In April 2005, plaintiff went to Harbor UCLA Medical Center for follow-up. She complained of lower back pain. She had not taken pain medication that day, but she acknowledged "100% relief" with her prescription medication, which is not identified in the progress note. Plaintiff was instructed to taker her medication as ordered. [AR 322]. A post-surgical MRI of the lumbar spine taken in May 2005 was interpreted as showing "degenerative and constitutional changes" causing "mild spinal canal stenosis," with no evidence of impingement noted. [AR 22, 320].

During the November 2005 hearing, plaintiff testified that a tumor on her right side had been removed in February of that year. Asked by her attorney whether the surgery helped her back and leg pain, she answered, "Well, I think it helped a lot." [AR 419]. When her attorney asked, "You mean you feel better because of it?", plaintiff replied, "Some of it. That was my problem, the tumor." [AR 419]. Plaintiff also testified that she began a course of physical therapy in November 2005 for pain from a "pinched nerve"

---

[2] This November 2004 treatment report and many other medical records from late 2004 and 2005 were submitted only to the Appeals Council and were not in the record before the ALJ. [See AR 319-410].

5

in her right leg. [AR 419-420]. Plaintiff said that she had been on the waiting list for physical therapy. [AR 420].

> The ALJ found that plaintiff had
>
> a lipoma in the right flank area that was treated conservatively with over-the-counter medications until it was removed in February 2005. According to the claimant's own account, the removal of the lipoma has helped a lot. The post-hearing records from Harbor UCLA show that the claimant reported doing well with minimal pain shortly after the procedure. I find the claimant's lipoma did not cause any functional limitations lasting 12 months.

[AR 21].

Prior to January 2004, there is scant mention of the lipoma and no evidence of treatment for any pain or limitations related to it. Plaintiff sought treatment between December 2003 and April 2004 for intermittent right flank pain and said she had experienced similar pain off and on in the past, but she did not complain of any functional limitations. She said that she took no medication for that pain. She was instructed to take over-the-counter analgesics as needed.

In November 2004, plaintiff sought treatment for right leg pain that became worse with bending and prolonged sitting, but the only treatment prescribed at that time was Tylenol. In December 2004, plaintiff was prescribed narcotic pain medication. Less than six weeks later, the lipoma was successfully removed. Post-operatively, plaintiff managed her pain (including pain from her incision, which was healing well) with only one Vicodin at night. Plaintiff testified that removal of the lipoma "helped a lot." [AR 419]. Post-operative treatment reports, however, indicate that plaintiff obtained complete relief when she took her medication as directed. She also said that she started physical therapy for a "pinched nerve" in November 2005 after being on a waiting list. [AR 418-420].

Substantial evidence supports the ALJ's finding that plaintiff's did not have any functional limitations related to her lipoma that met the 12-month durational requirement to establish disability.

**Credibility evaluation**

Plaintiff also contends that the ALJ failed properly to consider the credibility of her subjective complaints. [See JS 7-14].

Once a disability claimant produces evidence of an underlying physical or mental impairment that is reasonably likely to be the source of his or her subjective symptoms, the adjudicator is required to consider all subjective testimony as to the severity of the symptoms. Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc); see also 20 C.F.R. §§ 404.1529(a), 416.929(a) (explaining how pain and other symptoms are evaluated). Although the ALJ may then disregard the subjective testimony he considers not credible, he must provide specific, convincing reasons for doing so. Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001; see also Moisa, 367 F.3d at 885 (stating that in the absence of evidence of malingering, an ALJ may not dismiss the subjective testimony of claimant without providing "clear and convincing reasons"). The ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa, 367 F.3d at 885. If the ALJ's assessment of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the court's role to "second-guess" it. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

In evaluating subjective symptom testimony, the ALJ must consider "all of the evidence presented," including the following factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of pain and other symptoms; (3) precipitating and aggravating factors, such as movement, activity, and environmental conditions; (4) the type, dosage, effectiveness and adverse side effects of any pain medication; (5) treatment, other than medication, for relief of pain or other symptoms; (6) any other measures used by the claimant to relieve pain or other symptoms; and (7) other factors concerning the claimant's functional restrictions due to such symptoms. See 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); see also Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, at *3 (clarifying the Commissioner's policy regarding the evaluation of pain and other symptoms). The ALJ also may employ "ordinary techniques of credibility evaluation," considering such factors as (8) the claimant's reputation for truthfulness; (9) inconsistencies within the claimant's testimony, or between the claimant's testimony and the claimant's conduct; (10) a lack of candor by the claimant regarding matters other than the claimant's subjective symptoms; (11) the claimant's work record; and (12) information from physicians, relatives, or friends concerning the nature, severity, and effect of the claimant's symptoms. See Light v. Social Sec.

Admin., 119 F.3d 789, 792 (9th Cir. 1997); Fair v. Bowen, 885 F.2d 597, 604 n.5 (9th Cir. 1989).

The ALJ articulated clear and convincing reasons for rejecting the alleged severity of plaintiff's pain complaints. As noted above, substantial evidence supports the ALJ's finding that plaintiff's lipoma did not cause functional limitations that lasted or were expected to last for twelve consecutive months. In making that finding, the ALJ permissibly rejected the alleged severity of plaintiff's pain complaints related to her lipoma. That determination was supported by the dearth of objective medical evidence of any functional impairment related to the lipoma, her conservative treatment history prior to excision of the lipoma, the absence of a longitudinal record of significant pain complaints about the lipoma by plaintiff to her doctors, and her testimony that indicating that removal of her lipoma "helped a lot."

Plaintiff also alleged that she had back pain from a "pinched nerve" or sciatica as well as right leg and knee pain. She said that her pain sometimes radiated up into her right arm and shoulder. She alleged that she suffered from depression.

The ALJ permissibly discredited plaintiff's subjective symptom allegations in part because they were out of proportion to the objective findings. [AR 22]. See Burch, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."). X-rays of plaintiff's right knee were negative, while her lumbar spine MRI showed only mild stenosis and no nerve impingement. [AR 22-23]. The ALJ noted that plaintiff testified that her back and leg pain on the right side were related, and that removal of the lipoma helped her right side pain overall. [AR 19; see AR 419-420]. There was no evidence of complications or end organ damage from plaintiff's diabetes. [AR 23]. Plaintiff testified that medication helped her depression, and that her mental problems did not keep her from working. [AR 418]. Moreover, the treating source evidence established no severe mental functional limitations. [AR 22].

The ALJ also rejected the alleged severity of plaintiff's subjective symptoms and limitations because they were not consistent with the treatment she received. [AR 19, 23]. The ALJ noted, for example, that plaintiff testified that she started physical therapy in November 2005 after being placed on a waiting list, but she had not previously undergone physical therapy for her back or leg complaints. [AR 19, 239, 418]. Although she alleged disabling back pain, plaintiff did not have a work-up of her lumbar spine with imaging

studies until May 2005. [AR 23]. Plaintiff did not take strong prescription pain medication.[3] [AR 19, 23, 29]. See Burch, 400 F.3d at 681 (holding that the ALJ did not err in discrediting the claimant's pain testimony where she did not seek treatment for a period of four months, and observing that where the claimant's pain was "not severe enough to motivate her to seek" consistent treatment, "is powerful evidence regarding the extent to which she was in pain"); Osenbrock v. Apfel, 240 F.3d 1157, 1166 (9th Cir. 2001)(holding that the ALJ properly rejected the claimant's testimony because he did not use "Codeine or Morphine based analgesics that are commonly prescribed for severe and unremitting pain"). On examination by her attorney, plaintiff testified that she took pain medication, but she did not say what it was or how often she took it. [AR 19, 418-420]. Although plaintiff testified that pain restricted her to short intervals of sitting, standing, or walking, the ALJ accurately noted that plaintiff testified that she exercised daily to alleviate her symptoms. [AR 19, 417, 419].

The ALJ permissibly relied in part on plaintiff's daily activities to find her subjective allegations not fully credible. The ALJ cited disability reports indicating that even before successful excision of her lipoma, she could care for herself, grocery shop twice a week, carry a bag of groceries three blocks, vacuum, sweep, dust, do light mopping, and make her bed. [AR 98-115]. See Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (per curiam) (holding that the ALJ properly discredited the plaintiff's pain complaints based on (1) the lack of objective evidence to support claims of pain and weakness, (2) the plaintiff's performance of household chores (such as cooking, doing the dishes, going to the store, visiting relatives, and driving), (3) the absence of side effects from medication, and (4) the fact that the plaintiff did not require prescription pain medication). The ALJ noted that plaintiff did not need an assistive device to walk. [AR 23].

The ALJ did not arbitrarily reject the alleged severity of plaintiff's subjective complaints. Rather,

---

[3] Plaintiff asserts that she did take strong pain medication, and therefore that the ALJ's reasoning is not convincing. [JS 10]. Based on the record before him, which showed no more than intermittent use of Motrin and use of one Vicodin daily to manage post-surgical pain, the ALJ rationally concluded that plaintiff's pain medication regimen was not commensurate with the degree of pain she alleged. Plaintiff submitted some of her treatment records only to the Appeals Council, such as the December 2004 progress report showing that plaintiff was prescribed Neurontin and Tylenol with codeine in the weeks preceding her lipoma removal surgery. [AR 352]. Those records do not deprive the ALJ's credibility finding of substantial support in the record as a whole. [See AR 171, 173-174, 168-169, 179, 188-189, 396-397, 416-420].

1 | he articulated clear and convincing reasons, based on substantial evidence in the record as a whole, for
2 | rejecting plaintiff's subjective complaints of disabling pain.  Accordingly, the ALJ's credibility finding will
3 | not be disturbed.  See Rollins, 261 F.3d at 857.

**Conclusion**

For the reasons stated above, the Commissioner's decision is supported by substantial evidence and is free of legal error.  Accordingly, the Commissioner's decision is **affirmed.**

DATED: May 28, 2008

_____
ANDREW J. WISTRICH
United States Magistrate Judge